**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMAZENTIS SA and TIMELINE LONGEVITY, INC., | ) ) ) | |
| Plaintiff, | ) | C.A. No. _____ |
| v. | ) ) | |
| CODEAGE LLC, | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Amazentis SA ("Amazentis") and Timeline Longevity, Inc. ("Timeline Longevity") (collectively, "Plaintiffs"), file this Complaint for patent infringement against Codeage LLC ("Codeage"), and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs' claims arise under the patent laws of the United States, 35 U.S.C. §1 *et seq.*, including but not limited to 35 U.S.C. §271 and §§281-85.

2. Plaintiffs bring this action to: (i) compel Codeage to cease its infringement of Amazentis' United States patent rights based on Codeage's unauthorized commercial use, offer for sale, sale, and/or importation of urolithin A products in violation of Amazentis' patent rights as enumerated below; and (ii) compel Codeage to compensate Plaintiffs for the harm caused by Codeage's unlawful actions.

## PARTIES

3. Amazentis is a corporation organized under the laws of Switzerland with its principal place of business at EPFL Innovation Park Batiment C, Ecublens, 1024, Switzerland, and appears in this district for the limited purpose of bringing this litigation.

4. Timeline Longevity is a corporation organized under the laws of the State of Delaware with its principal place of business at 824 U.S. Highway 1, Suite 320, North Palm Beach, Florida 33408, and is a wholly owned and operated subsidiary of Amazentis.

5.      Upon information and belief, Codeage is a corporation organized under the laws of the State of Delaware and, upon information and belief, has a principal place of business located at 5628 W. Washington Boulevard, Los Angeles, CA 90016.

6.      Upon information and belief, Codeage makes or has made, uses or has used, offers for sale or has offered for sale, sells or has sold, and/or advertises or has advertised products containing urolithin A, including dietary supplement products, to customers nationwide, including to residents in Delaware and to residents of this district.

<u>**JURISDICTION AND VENUE**</u>

7.      This action arises under (i) the patent laws of the United States, 35 U.S.C. §100 *et seq.*, including but not limited to 35 U.S.C. §§271 and 281-85.

8.      This Court has subject matter jurisdiction over Codeage pursuant to 28 U.S.C. §§1331 and 1338.

9.      This Court has personal jurisdiction over Codeage because Codeage is a corporation organized under the laws of Delaware.

10.     This Court also has personal jurisdiction over Codeage because, on information and belief, Codeage has systematic and continuous contacts with this judicial district, and, on information and belief, has committed unlawful acts giving rise to this action within this judicial district, including by placing its urolithin A-containing products into the stream of commerce in this district.

11.     Venue is proper in this district under 28 U.S.C. §§1391 and 1400(b), at least because Codeage resides in this district by virtue of its organization under the Laws of the State of Delaware and has committed acts of infringement in the United States and, on information and belief, in this district.

<u>**BACKGROUND**</u>

<u>**Amazentis and Urolithin A**</u>

12.     Founded in 2007 by researchers at the Swiss Federal Institute of Technology, Amazentis is an innovative Swiss life sciences company that employs rigorous science to pioneer

2

the discovery and clinical development of innovative nutritional and cosmetic products. Amazentis is a leader in urolithin research and development; its scientists have published numerous papers on urolithin A, and it has conducted multiple clinical trials studying the uses and benefits of urolithin A.

13.    As background, the cells of humans and other animals undergo a process called autophagy in which they eliminate and then regenerate their own internal components that have become defective or damaged. For example, cells will recycle dysfunctional mitochondria—the internal cellular component that aerobically generates energy for the cell—through an autophagy process called mitophagy. Research performed by Amazentis and others shows that urolithin A, a compound that can be produced by certain microflora in the mammalian intestine following the consumption of dietary precursors, *e.g.*, compounds called ellagitannins, plays an important role in stimulating this process.

14.    However, research has also shown that the effectiveness with which mammalian intestinal microflora metabolize certain foods (*e.g.*, pomegranates, raspberries, strawberries, black raspberries, walnuts, and almonds) to produce urolithin A varies significantly from person to person, with most people producing limited urolithin A or none at all. In addition, research has further shown that autophagy and mitophagy become less efficient with age, leading to declines in health associated with aging, including declines in muscle mass, energy levels, immune function, cardiovascular function, cognitive health, and other physiological deficits.

15.    Through its own extensive research and development, Amazentis has developed processes to chemically synthesize urolithin A (*i.e.*, outside of the microflora of the mammalian intestines) in sufficient quantities to be used as a dietary supplement. Further, through rigorous animal and human clinical studies, the results of which have been published in peer-reviewed and other publications, Amazentis has demonstrated the benefits of direct supplementation with urolithin A.

16.    Amazentis has demonstrated through clinical trials that direct supplementation with effective amounts of urolithin A in excess of the amount produced by mammalian intestinal

microflora stimulates an intracellular process called mitophagy. Mitophagy is the selective removal and renewal of damaged mitochondria through a cell's pathway for autophagy.

17.    Amazentis has also demonstrated through clinical studies that the mitophagy induced by urolithin A supplementation confers numerous benefits that support healthy aging, including increased muscle function, and increased immune function, as some examples.

18.    Examples of these animal and human clinical studies include an animal study published on July 11, 2016, in the peer-reviewed scientific journal Nature Medicine (http://doi.org/10.1038/nm.4132) entitled "The lifespan and muscle benefits of urolithin A induces mitophagy and prolongs lifespan in C. elegans and increased muscle function in rodents"; a human clinical study published on June 14, 2019, in the peer-reviewed scientific journal Nature Metabolism (http://doi.org/10.1038/s/42255-019-0073-4) entitled "The mitophagy activator urolithin A is safe and induces a molecular signature of improved mitochondrial and cellular health in humans"; a human clinical study published on January 20, 2022, in the peer-reviewed scientific journal JAMA Network, (http://doi.org/10.1001/jamanetworkopen.2021.44279) entitled "Effect of urolithin A supplementation on muscle endurance and mitochondrial health in older adults, a randomized clinical trial"; and a human clinical study published on May 17, 2022, in the peer-reviewed scientific journal Cell Reports Medicine (http://doi.org/10.1016/j.xcrm.2022.100633) entitled "Urolithin A improves muscle strength, exercise performance, and biomarkers of mitochondrial health in a randomized trial in middle-aged adults." These and the results of other animal and human clinical studies conducted by Amazentis are clearly identified on Plaintiffs' TIMELINE® website: www.timeline.com/studies.

19.    Ultimately, having made significant investments to develop manufacturing methods for urolithin A at scale and to demonstrate the effectiveness of urolithin A as a healthy aging supplement product, Amazentis is now bringing to consumers in the United States and around the world an array of products featuring urolithin A branded as MITOPURE®. Amazentis is further commercializing TIMELINE®, a consumer brand containing its proprietary MITOPURE® brand of urolithin A.

4

20.     To protect its extensive investments in researching, developing and commercializing urolithin A-containing products, Amazentis has invested in securing patent protection. Amazentis now owns dozens of patents and published patent applications in various jurisdictions throughout the world related to urolithin compounds, including patents directed to processes to synthesize and scale up the production of urolithin compounds, and supplementing one's diet with effective amounts of urolithin compounds to improve biological functions in healthy people as well as to treat certain diseases. The existence of these patents, as well as numerous published patent applications owned by Amazentis, is clearly posted on Plaintiffs' TIMELINE® website, www.timeline.com/patents, an address on the Internet accessible to the public without charge.

### The Patents-in-Suit

21.     Amazentis is the owner of all right, title, and interest in U.S. Patents Nos. 10,485,782 ("the '782 Patent"), 11,020,373 ("the '373 Patent"), 12,310,943 ("the '943 Patent"), and 12,544,358 ("the '358 Patent") (collectively, the "Patents-in-Suit"), with full rights to bring suit to enforce the Patents-in-Suit, including the right to sue for past, present and future infringement. True and correct copies of each of the Patents-in-Suit are attached to this complaint as Exhibits 1 to 4.

22.     The '782 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on November 26, 2019, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Genoux as inventors, each of whom assigned their invention as disclosed in the '782 Patent to Amazentis.

23.     The '782 Patent is valid and enforceable.

24.     The '782 Patent claims, inter alia, "[a] method of increasing or maintaining mitochondrial function, comprising: administering to a subject in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function."

25.     The '373 Patent, entitled "Enhancing Autophagy Or Increasing Longevity By Administration Of Urolithins Or Precursors Thereof," was duly and legally issued by the United States Patent and Trademark Office on June 1, 2021, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Laurent Mouchiroud, Dongryeol Ryu, Penelope Andreux, and Johan Auwerx as inventors, each of whom assigned their invention as disclosed in the '373 Patent to Amazentis.

26.     The '373 Patent is valid and enforceable.

27.     The '373 Patent claims, inter alia, "[a] method of increasing autophagy, comprising the step of orally administering to a healthy human in need thereof an effective amount of urolithin A, or a pharmaceutically acceptable salt thereof, wherein the healthy human is not suffering from cancer or predisposed to developing cancer, autophagy in healthy human is increased, and the effective amount is about 70 mg to about 1050 mg."

28.     The '943 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on May 27, 2025, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Geneux as inventors, each of whom assigned their invention as disclosed in the '943  Patent to Amazentis.

29.     The '943 Patent is valid and enforceable.

30.     The '943 Patent claims, inter alia, "[a] method of [enhancing muscle / increasing or maintaining mitochondrial function] performance, comprising administering to a mammal in need thereof an effective amount of a urolithin, thereby [increasing muscle performance /

increasing or maintaining mitochondrial function]; wherein the effective amount of the urolithin is 300-500 mg/day, 450-750 mg/day, or 600-1000 mg/day."

31.    The '358 Patent, entitled "Enhancing Autophagy or Increasing Longevity by Administration of Urolithins," was duly and legally issued by the United States Patent and Trademark Office on February 10, 2026, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Laurent Mouchiroud, Dongryeol Ryu, Penelope Andreux, and Johan Auwerx as inventors, each of whom assigned their invention as disclosed in the '358 Patent to Amazentis.

32.    The '358 Patent is valid and enforceable.

33.    The '358 Patent claims, inter alia, "[a] composition, comprising urolithin A or a pharmaceutically acceptable salt thereof; and a second ingredient selected from the group consisting of resveratrol and coenzyme Q10; wherein the coenzyme Q10 is ubiquinol or ubiquinone."

34.    Plaintiffs sell products that practice at least one claim of each of the Patents-in-Suit.

### Codeage's Infringing Activities

35.    Codeage's offers for sale and sells at least one consumer product containing urolithin A through its own website, codeage.com, as well as through various ecommerce sites, including for example amazon.com, walmart.com, ebay.com, pintrest.com and others.

36.    Codeage, for instance, sells and offers for sale a urolithin A supplement product, which purportedly contains 500 mg of urolithin A per serving, to customers nationwide, including to residents of this district.

37.    Codeage sells its urolithin A supplement product through numerous channels, including through brick-and-mortar grocery and health food stores (*e.g.*, Erewhon) and through ecommerce sites for drug stores, department stores, discount stores, on Amazon.com, and through various other ecommerce sites. True and correct copies of printouts from various websites for these channels are attached as Exhibit 5.

38.     As demonstrated by numerous of these webpages, Codeage's urolithin A supplement is intended to "support health aging and mitochondrial function" as can be seen below on the screen shots of the Walgreens.com page (www.walgreens.com/store/c/codeage-liposomal-urolithin-a-supplement/ID=300449257-product) for Codeage's urolithin A product (a true and correct copy of this page is attached as Exhibit 6).

39.     Similarly, on vitaminscripts.com (http://vitaminscript.com/liposomal-urolithin-a-



60c/), Codeage promotes its urolithin A supplement as being "designed to support mitochondrial health, cellular health, and anti-aging pathways.  Further, as seen from the screenshot copied below from this webpage, Codeage further states that "Urolithin A is a postbiotic shown to support mitophagy—the recycling of damaged mitochondria—to enhance cellular renewal and

energy" and that its urolithin A supplement is "[i]deal for adults seeking advanced cellular and mitochondrial support, longevity enhancement, and improved energy metabolism—especially those focused on healthy aging."  A true and correct copy of webpage for Codeage's urolithin a supplement product is attached as Exhibit 7.

40.    Similarly, the grove.com webpage for Codeage's urolithin A product states that it

**How It Works:**

Urolithin A is a postbiotic shown to support mitophagy—the recycling of damaged mitochondria—to enhance cellular renewal and energy. Resveratrol, a powerful polyphenol, supports healthy aging and cardiovascular function. Betaine helps maintain cellular methylation processes, while CoQ10 supports mitochondrial ATP synthesis. The liposomal matrix ensures superior delivery and bioavailability of these potent ingredients.

**Who Should Use This Product:**

Ideal for adults seeking advanced cellular and mitochondrial support, longevity enhancement, and improved energy metabolism—especially those focused on healthy aging.

"[s]upports cellular energy and mitochondrial health," (www.grove.co/products/liposomal-urolithin-a-codeage, a true and correct copy of which is attached at Exhibit 8); and the pureformulas.com webpage for Codeage's urolithin A product states that it "[p]rovides 500mg of Urolithin A per serving for mitochondrial and cellular support," (www.pureformulas.com/product/liposomal-urolithin-a/, a true and correct copy of which is attached at Exhibit 9

41.    On other ecommerce stores and webpages, Codeage's urolithin A supplement product is categorized as a mitochondrial or healthy aging supplement and/or juxtaposed with other urolithin A supplements for healthy aging and mitochondrial support.  The General Nutrition Company's (GNC's) webpage identifies Codeage's urolithin A supplement product as a "Mitochondria Supplement[]" that is "designed to support cellular energy production and overall vitality, … help optimize mitochondrial function, … [and] enhance physical performance" (www.gnc.com/buy/mitochondria-supplements, a true and correct copy of which is attached as Exhibit 10)  On Amazon.com, Codeage's urolithin A supplement product is marketed among other "related" urolithin A supplement products for "cellular renewal" and "mitochondrial support", and it is further described by Amazon's shopping assistant, Rufus, as

"support[ing] healthy aging and mitochondrial function" (www.amazon.com/Codeage-Liposomal-Urolithin-Supplement-Bioavailability, a true and correct copy of which is attached as Exhibit 11).

42.    Codeage also markets and sells its urolithin A supplement product through its own website.  Attached as Exhibit 12 is a true and correct copy of the webpage on www.codeage.com for Codeage's urolithin A supplement product. (www.codeage.com/products/liposomal-urolithin-a-trans-resevratrol-betaine).  On its website, Codeage describes "[u]rolithin A (UA) [as] a metabolite produced during the digestion of ellagitannins[.]"  As illustrated by the various reviews posted on Codeage's website, customers purchase Codeage's urolithin A supplement product for "more energy," improved "post workout recovery," "[i]mprove[d] [m]itochondrial health," "[i]mprove[d] muscle function," reduced "muscle soreness," aiding "muscle strengthening," or otherwise as a "mitochondrial supplement."

43.    Further, Codeage's website includes a copy of the label for urolithin A supplement product (copied below).  According to the label, each serving of Codeage's urolithin A supplement product includes 500mg of urolithin A, 150mg of trans-resveratrol, 102.5mg of betaine anhydrous, and 60mg of coenzyme Q10.



www.codeage.com/products/liposomal-urolithin-a-trans-resevratrol-betaine (a true and correct copy of which is attached as Exhibit 13).

44.    Additionally, in a press release dated February 2023 (www.codeage.com/blogs/newsroom/liposomal-urolithin-a-supplement, a true and correct copy of which is attached as Exhibit 14), Codeage describes its urolithin A supplement as providing "mitochondrial support" and further states that "[u]rolithin A may offer … healthy aging support by supporting mitophagy, the process of 'recycling' mitochondria" as seen in the screenshot taken from this press release.



**Infringement of the Patents-in-Suit**

45.    Independent claim 1 of the '782 Patent recites: "A method of increasing or maintaining mitochondrial function, comprising: administering to a subject in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function."

46.    On information and belief, Codeage's statements in attached exhibits, as referenced in the prior section, are meant to convey that using Codeage's urolithin A products increases or maintains mitochondrial function. These promotional statements by Codeage are

meant to induce customers to take an effective amount of Codeage's urolithin A products in order to increase or maintain mitochondrial function.

47.     On information and belief, consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '782 Patent as well as one or more of the following additional claims that depend on claim 1:

      a.  claim 3 ("wherein the urolithin is urolithin A"),

      b.  claim 5 ("wherein the urolithin is administered orally"),

      c.  claim 7 ("wherein the subject is a human"),

      d.  claim 21 ("wherein mitochondrial function is maintained"),

      e.  claim 22 ("wherein mitochondrial function is increased"),

      f.  claim 23 ("wherein mitochondrial activity is increased"),

      g.  claim 25 ("wherein the energy of the subject is increased"),

      h.  claim 26 ("wherein mitochondrial biogenesis is increased"),

      i.  claim 28 ("wherein ATP levels are increased in tissue") and

      j.  claim 29 ("wherein the tissue is a muscle tissue"), which also depends on claim 28.

48.     Independent claim 2 of the '782 Patent recites: "A method of treating, preventing, or managing a mitochondria-related disease or condition associated with altered mitochondrial function or a reduced mitochondrial density, comprising: administering to a subject in need thereof a therapeutically effective amount of a urolithin, thereby treating, preventing, or managing the disease or condition associated with altered mitochondrial function or reduced mitochondrial density."

49.     On information and belief, Codeage's statements in attached exhibits, as referenced in the prior section, are meant to convey that taking Codeage's urolithin A product will treat, prevents or manages a mitochondrial-related condition associated with altered mitochondrial function or a reduced mitochondrial density. These promotional statements by Codeage are meant to induce customers to take an effective amount of Codeage's urolithin A

products in order to treat, prevent or manage a mitochondrial-related condition associated with altered mitochondrial function or a reduced mitochondrial density.

50.    On information and belief, consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least independent claim 2 of the '782 Patent as well as one or more of the following additional claims that depend on claim 2:

     a.  claim 10 ("wherein the mitochondria-related disease or condition is decrease of muscle performance or mental performance"),

     b.  claim 11("wherein the mitochondria-related disease or condition is age-related decline in mitochondrial function"),

     c.  claim 13 ("wherein the urolithin is urolithin A"),

     d.  claim 15 ("wherein the urolithin is administered orally"),

     e.  claim 17 ("wherein the subject is a human"),

     f.  claim 24 ("wherein mitochondrial activity is increased"),

     g.  claim 27 ("wherein mitochondrial biogenesis is increased"),

     h.  claim 30 ("wherein ATP levels are increased in tissue") and

     i.  claim 31 ("wherein the tissue is a muscle tissue"), which also depends on claim 30.

51.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as supplement product, while having knowledge of or being willfully blind to existence of the '782 Patent, Codeage actively induces the infringement of at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of the '782 Patent.

52.    On information and belief, Codeage's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement product, while having knowledge of or being willfully blind to existence of the '782 Patent, actively induces the infringement of at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of the '782 Patent.

53.     On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A as supplement product, while knowing that it is especially adapted for use in an infringement of the '782 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Codeage has contributed to the infringement of at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of the '782 Patent.

54.     Independent claim 1 of the '373 Patent recites: "A method of increasing autophagy, comprising the step of orally administering to a healthy human in need thereof an effective amount of urolithin A, or a pharmaceutically acceptable salt thereof, wherein the healthy human is not suffering from cancer or predisposed to developing cancer, autophagy in the healthy human is increased, and the effective amount is about 70 mg to about 1050 mg."

55.     On information and belief, Codeage's statements in attached exhibits, as referenced in the prior section, are meant to convey that taking Codeage's urolithin A supplement product at the listed dosages increases autophagy in a healthy human. These promotional statements by Codeage are meant to induce customers to take an effective amount of Codeage's urolithin A products in order to increase autophagy in a healthy human.

56.     On information and belief, consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '373 Patent as well as the following additional claims that depend on claim 1:

    a.  claim 2 ("wherein the autophagy is mitophagy"),

    b.  claim 5 ("wherein the effective amount is about 140 mg to about 630 mg"),

    c.  claim 6 ("wherein the effective amount is about 210 mg to about 520 mg"),

    d.  claim 7 ("wherein the effective amount is about 140 mg to about 525 mg"),

    e.  claim 8 ("wherein the effective amount is about 280 mg to about 490 mg"),

    f.  claim 10 ("wherein the effective amount is about 500 mg"), and

g.  claim 18 ("wherein the urolithin A is administered in the form of a tablet or capsule.").

57.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, between "about 70 mg and about 1050 mg" as a supplement product, while having knowledge of or being willfully blind to existence of the '373 Patent, Codeage actively induces the infringement of at least 1, 2, 5, 6, 7, 8, 10, and 18 of the '373 Patent.

58.    On information and belief, Codeage's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement product, while having knowledge of or being willfully blind to existence of the '373 Patent, actively induces the infringement of at least claims 1, 2, 5, 6, 7, 8, 10, and 18 of the '373 Patent.

59.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, between "about 70 mg and about 1050 mg" as a supplement product, while knowing that it is especially adapted for use in an infringement of the '373 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Codeage has contributed to the infringement of at least claims 1, 2, 5, 6, 7, 8, 10, and 18 of the '373 Patent.

60.    Independent claim 1 of the '943 Patent recites: "A method of enhancing muscle performance, comprising administering to a mammal in need thereof an effective amount of a urolithin, thereby increasing muscle performance; wherein the effective amount of the urolithin is 300-500 mg/day, 450-750 mg/day, or 600-1000 mg/day."

61.    On information and belief, Codeage's statements in attached exhibits, as referenced in the prior section, are meant to convey that taking Codeage's urolithin A product at the listed dosages enhances muscle performance in a human. These promotional statements by Codeage are meant to induce customers to take the listed dosages of Codeage's urolithin A products in order to enhance muscle performance.

15

62.    On information and belief, consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least independent claims 1 of the '943 Patent as well as the following additional claims that depend on claims 1:

a.  claim 6 ("wherein the effective amount of the urolithin is 600-1000 mg/day"),

b.  claim 7 ("wherein the effective amount of the urolithin is 1000 mg/day"), which also depends on claim 6,

c.  claim 9 ("wherein the urolithin is urolithin A"),

d.  claim 10 ("wherein the urolithin is administered orally"), claim 11 ("wherein the mammal is a human"),

e.  claim 16 ("wherein the urolithin is administered in the form of a dietary supplement"), and

f.  claim 33 ("wherein the urolithin is urolithin A; the effective amount of the urolithin A is 1000 mg/day; the urolithin A is administered in the form of a dietary supplement; and the mammal is a human.")

63.    Independent claim 2 of the '943 Patent recites "A method of increasing or maintaining mitochondrial function, comprising administering to a mammal in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function; wherein the effective amount of the urolithin is 300-500 mg/day, 450-750 mg/day, or 600-1000 mg/day."

64.    On information and belief, Codeage's statements in attached exhibits, as referenced in the prior section, are meant to convey that taking Codeage's urolithin A supplement product at the listed dosage increases or maintains mitochondrial function in a human.

65.    These promotional statements by Codeage are meant to induce customers to take the listed dosages of Codeage's urolithin A products in order increase or maintain mitochondrial function in a human.

66.     On information and belief, consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least independent claims 2 of the '943 Patent as well as the following additional claims that depend on claims 2:

    a.  claim 20 ("wherein the urolithin is urolithin A"),

    b.  claim 24 ("wherein the effective amount of the urolithin is 600-1000 mg/day"),

    c.  claim 25 ("wherein the effective amount of the urolithin is 1000 mg/day"), which also depends on claim 24,

    d.  claim 26 ("wherein the urolithin is administered orally"),

    e.  claim 27 ("wherein the mammal is a human"),

    f.  claim 30 ("wherein the urolithin is administered in the form of a dietary supplement"),

    g.  claim 31 ("wherein the urolithin is urolithin A"), which depends on claim 27, and

    h.  claim 35 ("wherein the urolithin is urolithin A; the effective amount of the urolithin A is 1000 mg/day; the urolithin A is administered in the form of a dietary supplement; and the mammal is a human.")

67.     On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, including at the range "600-1000 mg" as a supplement product, while having knowledge of or being willfully blind to existence of the '943 Patent, Codeage actively induces the infringement of at least 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35 of the '943 Patent.

68.     On information and belief, Codeage's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of its urolithin A as supplement product, while having knowledge of or being willfully blind to existence of the '943 Patent, actively induces the infringement of at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35 of the '943 Patent.

69.     On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A, including at the range "600-1000 mg," as a supplement product, while knowing

that it is especially adapted for use in an infringement of the '943 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Codeage has contributed to the infringement of at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35 of the '943 Patent.

70.     Independent claim 1 of the '358 Patent recites: "A composition, comprising urolithin A or a pharmaceutically acceptable salt thereof; and a second ingredient selected from the group consisting of resveratrol and coenzyme Q10; wherein the coenzyme Q10 is ubiquinol or ubiquinone."

71.     On information and belief, Codeage's urolithin A product is composed of (a) urolithin A or a pharmaceutically acceptable salt thereof, (b) resveratrol, and (c) coenzyme Q10.

72.     The label for Codeage's urolithin A product does not specify what form of coenzyme Q10 it uses, *i.e.,* it does not distinguish between ubiquinone (the oxidized form) or ubiquinol (the reduced form).  The Question and Answer section of Codeage's product page, however, specifies that Codeage uses the oxidized form ubiquinone.



Screenshot taken from www.codeage.com/products/liposomal-urolithin-a-trans-resveratrol-betaine (Exhibit 15).

73. On information and belief, Codeage's statements in attached exhibits, as referenced in the prior sections, are meant to convey that taking Codeage's urolithin A product is composed of urolithin A or a pharmaceutically acceptable salt thereof, resveratrol, and coenzyme Q10.

74. On information and belief, these promotional statements by Codeage are meant to induce customers to take the listed dosages of Codeage's urolithin A products, containing resveratrol and coenzyme Q10 in addition to urolithin A, in order to enhance longevity by increasing the mitochondrial function of mitophagy.

75. On information and belief, Codeage infringes, or consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '358 Patent as well as the following additional claims that depend on claim 1:

    a. claim 2 ("wherein the second ingredient is resveratrol"),

    b. claim 5 ("further comprising a pharmaceutically acceptable carrier"),

    c. claim 6 ("A method of improving or increasing mitochondrial function, comprising administering to a vertebrate in need thereof an effective amount of the composition of claim 1"),

    d. claim 7 ("The method of claim 6, wherein the mitochondrial function is mitophagy"), which also depends on claim 6,

    e. claim 8 ("further comprising a pharmaceutically acceptable carrier"), which also depends on claim 2,

    f. claim 11 ("A method of improving or increasing mitochondrial function, comprising administering to a vertebrate in need thereof an effective amount of the composition of claim 2."),

    g. claim 12 ("wherein the mitochondrial function is mitophagy"), which also depends on claim 11, and

    h. claim 17 ("wherein the composition is in the form of a dietary supplement or a neutraceutical"), which also depends on claim 2.

76.     Based upon Codeage's statements concerning the form of coenzyme Q10 utilized in Codeage's urolithin A product, on information and belief Codeage infringes, or consumers of Codeage's supplement product infringe, literally or under the doctrine of equivalents, at least the following additional claims that depend on claim 1:

    a.  claim 4 ("the coenzyme Q10 is ubiquinone"),

    b.  claim 10 ("further comprising a pharmaceutically acceptable carrier"),

    c.  claim 15 ("A method of improving or increasing mitochondrial function, comprising administering to a vertebrate in need thereof an effective amount of the composition of claim 4."),

    d.  claim 16 ("wherein the mitochondrial function is mitophagy"), which depends on claims 4 and 15, and

    e.  claim 19 ("The composition of claim 4, wherein the composition is in the form of a dietary supplement or a neutraceutical").

77.     On information and belief, by producing and selling urolithin A with a second ingredient of resveratrol as a supplement product, while having knowledge of or being willfully blind to existence of the '358 Patent, Codeage actively infringes of at least claims 1, 2, 5, 8, and 17 of the '358 Patent.

78.     On information and belief, by offering for sale and selling urolithin A with a second ingredient of resveratrol as a supplement product, while having knowledge of or being willfully blind to existence of the '358 Patent, Codeage actively induces the infringement of at least claims 6, 7, 11, and 12, of the '358 Patent.

79.     On information and belief, Codeage's labeling, marketing, promotional, and sales materials and actions in offering for sale and selling its urolithin A with a second ingredient of resveratrol as supplement product, while having knowledge of or being willfully blind to existence of the '358 Patent, actively induces the infringement of at least claims 6, 7, 11, and 12 of the '358 Patent.

80.     On information and belief, by offering for sale and selling urolithin A with a second ingredient of resveratrol as supplement product, while knowing that it is especially adapted for use in an infringement of the '358 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Amazentis' other duly granted patent rights and in view of Amazentis' published clinical studies showing that urolithin A supplementation induces mitophagy, Codeage has contributed to the infringement of at least claims 6, 7, 11, and 12 of the '358 Patent.

**Codeage's Knowledge and Willful Infringement of the Patents-in-Suit**

81.     Amazentis has caused the patent numbers of each of the Patents-in-Suit to appear on articles practicing the Patents-in-Suit and/or by directing the public to an Internet location (accessible to the public without charge) that associates the patented articles with the number(s) of the patent(s) in compliance with 35 U.S.C. §287.

82.     Moreover, on information and belief, Codeage has known of the existence of at least the '782, and '373 Patents and the inventions claimed in these patents, since at least March, 2023; and of the existence of the '943 Patent, the '358 Patent, and the inventions claimed in those patents, since at least the filing of this lawsuit. Since at least those times, Codeage has known that the Patents-in-Suit are relevant to Codeage's urolithin A product, that Amazentis asserted Codeage was infringing those patents as to the products identified in this complaint, and that Codeage is infringing, inducing the infringement of, and contributing to the infringement of those patents.

83.     On March 8, 2023, Amazentis sent a letter by email to Codeage's Managing Partner, Gregory Papigny, identifying Codeage's urolithin A product as infringing Amazentis '782 and '373 Patents.  Amazentis further explained with examples how Codeage was infringing Amazentis '782 Patent under 35 U.S.C. § 271(b) and (c) by the marketing of its accused product.

84.     In its March 8, 2023, letter, Amazentis also directed Codeage to its website that was freely accessible on the internet that identified the '782 and '373 Patents and other U.S. patents assigned to Amazentis.

85.     Accordingly, on information and belief, Codeage was aware of the '782, and '373 Patents and its infringement of those patents at least as early as March 21, 2023, the date it received Amazentis' letter, although it should have been aware it was infringing those patents earlier.

86.     Amazentis sent follow up letter to Codeage's outside counsel, Omid Khalifeh, on August 23, 2024, by email, maintaining that Codeage's sale of urolithin A as a dietary supplement for healthy aging infringes Amazentis' United States patent rights, including both the '782 and '373 Patents

87.     Following Amazentis' correspondence, Codeage made certain changes to its urolithin A product advertising but has refused to remove its infringing products from the market, despite Amazentis explaining that Codeage's product placement and marketing was continuing to infringe its patent rights and requesting that Codeage comply with its request to stop using Plaintiffs' intellectual property rights and stop selling infringing products.

88.     Accordingly, on information and belief, Codeage has known since at least March 2023 that its commercial offers for sale and sale of its urolithin A supplement product has infringed and will infringe one or more claims of the '782 and '373 Patents directly or indirectly. At least since March 2023, Codeage has acted, and has continued to act, with a specific intent to induce others to infringe the '782, and '373 Patents.

89.     On information and belief, Codeage has long known about Amazentis, its clinical trials, Plaintiffs' use of the Mitopure® urolithin A product, and the patent rights that are the subject of this complaint and recited above.  Notably, Codeage's urolithin A supplement product is being sold at the same dosage as Plaintiffs' own Timeline® products containing Mitopure® urolithin A, which is the same dosage established in Plaintiffs' on published clinical trials (*e.g.* Amazentis' clinical trial titled "Effect of urolithin A supplementation on muscle endurance and mitochondrial health in older adults" published in the Journal of the American Medical Association

90.    In addition, the filing of this Complaint provides further notice to Codeage of the Patents-in-Suit under 35 U.S.C. § 287, including each of the '782, '373, '943, and '358 Patents and Codeage's relevant product.

### CLAIMS FOR RELIEF
### COUNT I
### (Infringement of U.S. Patent 10,485,782)

91.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

92.    Consumers of Codeage's urolithin A products have been, and are directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '782 Patent, including at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31, by using Codeage's urolithin A products in the United States, without authority.

93.    Codeage has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A care products), induced others including its customers to infringe one or more claims of the '782 Patent, including at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.

94.    Codeage has through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products), contributed to the infringement of one or more claims of the '782 Patent, including at least claims 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.

95.    Codeage does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

96.    Codeage's infringement of the '782 Patent has been and continues to be willful.

97.    Plaintiffs have and will continue to suffer damages because of Codeage's infringement of the '782 Patent.

98.     Plaintiffs have and will continue to be irreparably harmed by Codeage's infringement of the '782 Patent until and unless Codeage's infringing acts are enjoined or otherwise cease.

## COUNT II
### (Infringement of U.S. Patent 11,020,373)

99.     Plaintiffs reallege and incorporate by reference the forgoing paragraphs as if fully set forth herein.

100.    Consumers of Codeage's urolithin A products have been, and are directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '373 Patent, including at least claims 1-2, 5-8, 10, and 18, by using Codeage's urolithin A products in the United States, without authority.

101.    Codeage has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products) induced others including its customers to infringe one or more claims of the '373 Patent, including at least claims 1-2, 5-8, 10, and 18.

102.    Codeage has through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products) contributed to the infringement of one or more claims of the '373 Patent, including at least claims 1-2, 5-8, 10, and 18.

103.    Codeage does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

104.    Codeage's infringement of the '373 Patent has been and continues to be willful.

105.    Plaintiffs have and will continue to suffer damages because of Codeage's infringement of the '373 Patent.

106.    Plaintiffs have and will continue to be irreparably harmed by Codeage's infringement of the '373 Patent until and unless Codeage's infringing acts are enjoined or otherwise cease.

**COUNT III**
**(Infringement of U.S. Patent 12,310,943)**

107.   Plaintiffs reallege and incorporate by reference the forgoing paragraphs as if fully set forth herein.

108.   Consumers of Codeage's urolithin A products have been, and are directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '943 Patent, including at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35, by using Codeage's urolithin A products in the United States, without authority.

109.   Codeage has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products) induced others including  its customers to infringe one or more claims of the '943 Patent, including at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35.

110.   Codeage has through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products) contributed to the infringement of one or more claims of the '943 Patent, including at least claims 1, 2, 6, 7, 9, 10, 11, 16, 24, 25, 26, 27, 30, 31, 33, and 35.

111.   Codeage does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

112.   Codeage's infringement of the '943 Patent has been and continues to be willful.

113.   Plaintiffs have and will continue to suffer damages because of Codeage's infringement of the '943 Patent.

114.   Plaintiffs have and will continue to be irreparably harmed by Codeage's infringement of the '943 Patent until and unless Codeage's infringing acts are enjoined or otherwise cease.

**COUNT IV**
**(Infringement of U.S. Patent 12,544,358)**

115.   Plaintiffs reallege and incorporate by reference the forgoing paragraphs as if fully set forth herein.

116.    Codeage and consumers of Codeage's urolithin A products have been, and are directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '358 Patent, including at least claims 1, 2, 5, 6, 7, 8, 11, 12, and 17, by producing and selling and/or using Codeage's urolithin A products in the United States, without authority.

117.    Codeage has, through producing and selling its urolithin A products, infringed one or more claims of the '358 Patent, including at least claims 1, 2, 5, 8, and 17.

118.    Codeage has, through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products) induced others including its customers to infringe one or more claims of the '358 Patent, including at least claims 6, 7, 11, and 12.

119.    Codeage has through its actions (including but not limited to the sale and promotion of its urolithin A products and/or through the instructions on the label of its urolithin A products) contributed to the infringement of one or more claims of the '358 Patent, including at least claims 6, 7, 11, and 12.

120.    Codeage does not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

121.    Codeage's infringement of the '358 Patent has been and continues to be willful.

122.    Plaintiffs have and will continue to suffer damages because of Codeage's infringement of the '358 Patent.

123.    Plaintiffs have and will continue to be irreparably harmed by Codeage's infringement of the '358 Patent until and unless Codeage's infringing acts are enjoined or otherwise cease.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that Codeage has infringed, either directly or indirectly, the '782, '373, '943, and '358 Patents;

B.      An order preliminarily and/or permanently enjoining Codeage, together with its directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, other related business entities, and all persons in active concert or privity with them and their successors and assigns, from directly or indirectly infringing the '782, '373, '943, and '358 Patents;

C.      A judgment that awards Plaintiffs damages adequate to compensate for Codeage's infringing acts in accordance with 35 U.S.C. § 284;

D.      In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '782, '373, '943, and '358 Patents;

E.      A judgment declaring that Codeage's infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

F.      Finding that this case is exception under 35 U.S.C. § 285, and awarding Plaintiffs their reasonable attorneys' fees incurred in connection with this action;

G.      Awarding Plaintiffs their costs and expenses in this action, including expert and witness fees;

H.      An award of prejudgment and post-judgment interest;

I.      Awarding Plaintiffs such other and future relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all issues triable by jury.

ASHBY & GEDDES

*Of Counsel:*

/s/ *Andrew C. Mayo*

Jeffrey I.D. Lewis
Mital Patel
**FOLEY HOAG LLP**
1301 Avenue of the Americas
New York, NY 10019
Phone: 212.812.0400
Fax: 212.812.0399
jidlewis@foleyhoag.com
mpatel@foleyhoag.com

Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654 1888
amayo@ashbygeddes.com

*Attorneys for Plaintiff AMAZENTIS SA and*
*TIMELINE LONGEVITY INC.*

Dana M. Gordon
Nathanial J. McPherson
Aaron Loving
**FOLEY HOAG LLP**
Seaport West, 155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000
dgordon@foleyhoag.com
nmcpherson@foleyhoag.com
aloving@foleyhoag.com

Dated: March 9, 2026